GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.

---

ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY, Appellee, v. DES MOINES UNION RAILWAY COMPANY, Appellant.

APPEAL AND ERROR: Presentation and Reservation of Grounds 1 —Necessity—Constitutional Law. Questions in no manner brought to the attention of the trial court will not be reviewed on appeal. So held as to a constitutional question relative to the Federal Interstate Commerce Act.

COMMERCE: Interstate Commerce—Damages—Judgment Against 2 Initial Carrier—Conclusiveness Against Connecting Carrier. A foreign, non-collusive judgment, rendered under the Federal Interstate Commerce Act, against an initial carrier for damages to a shipment, is, in an action by the initial carrier against a subsequent connecting carrier to recoup the damages, a final adjudication *as to the amount of damages*, even though the subsequent connecting carrier was not a party to the action against the initial carrier. Act Congress June 29, 1906, Amending Act Feb. 4, 1887 (34 Stat. at L., Part 1, page 595).

COMMERCE: Interstate Commerce—Damages—Recoupment by 3 Initial Carrier—Evidence. In an action by an innocent initial carrier against a guilty subsequent connecting carrier for recoupment of the amount paid by the initial carrier on judgment for injury to the shipment, such judgment, *along with the pleadings, evidence, instructions, and verdict* attending the judgment, is admissible, the former to show the amount of the recoupment, the latter to identify the judgment and to show that the exact injury for which the initial carrier had to pay occurred on defendant's line.

COMMERCE: Interstate Commerce—Damages—Action Against 4 Initial Carrier—Notice to Guilty Connecting Carrier to Defend. Notice by an initial carrier to a subsequent connecting car-

rier that the initial carrier has been sued for damages occur-ring to a shipment, and demand that such subsequent carrier appear and defend, is, while proper practice, not necessary in order to arm the initial carrier with right to recover of the subsequent carrier the amount of the resulting judgment, pro-vided the damages occurred on the line of such subsequent car-rier.

*Appeal from Polk District Court.*—Charles A. Dudley, Judge.

Wednesday, May 16, 1917.

Rehearing Denied Monday, September 24, 1917.

The issues and material facts are sufficiently stated in the opinion.—*Affirmed.*

*Parker, Parrish & Miller,* for appellant.

*Carr, Carr & Evans,* for appellee.

Weaver, J.—The parties plaintiff and defendant are railway companies constituting parts of a connected line of common carriers between Blair, Nebraska, and Des Moines, Iowa. On May 31, 1913, one D. M. Duncan deliv-ered to plaintiff at Blair a carload of strawberries for trans-portation to Des Moines. The shipment was accepted, and plaintiff thereafter delivered it to the Chicago & Great Western Railway Company, another connecting carrier, which in turn delivered it to the defendant, the terminal carrier of such shipment. Thereafter, the shipper, Duncan, brought suit against the plaintiff in this case in the district court of Buchanan County in the state of Missouri to recov-er damages for injuries to said shipment alleged to have been caused by the negligence of the carrier in transporting the car to Des Moines. Such action being instituted, the plaintiff herein gave to the defendant notice thereof in writing. This notice also informed defendant of the nature

of the claim asserted by Duncan, and of plaintiff's conten-
tion that the damage, if any, was sustained while the car
was in the possession of the defendant, and that, if Duncan
should succeed in obtaining a recovery in said action,
plaintiff would look to defendant to make reimbursement
to the amount of such judgment and all costs and expenses
which plaintiff might be compelled to pay. In this connec-
tion, plaintiff also called upon defendant to appear with it
in the Duncan suit and assume the defense thereof. The
defendant ignored the notice and did not appear in that
action. On trial of the case in the Missouri court, Duncan
recovered a judgment of $600 and costs, all of which plaintiff
has paid in full. Having discharged the judgment, plaintiff
began this action at law. In its petition, having recited
the facts which we have hereinbefore stated, plaintiff alleged
that the shipment of strawberries was transported by it
and by the Chicago & Great Western Company and delivered
to the defendant as the terminal carrier in good condition,
and that such damage was caused by the negligence of the
defendant and its agents and servants. On the showing
thus made, and under the Acts of Congress regulating inter-
state commerce, plaintiff demands judgment against defend-
ant for the amount expended by it in satisfying the Duncan
claim and for expenses incurred in defending such action.

Answering the petition, defendant denies the same and
each and every allegation therein made. On trial of the
issues thus joined, it was stipulated by the parties that
the car of strawberries was delivered to the plaintiff company
at Blair, Nebraska, in good condition on May 31, 1913; that
plaintiff transported the same to St. Joseph, Missouri,
where it delivered the car to the Chicago & Great Western
Railway Company, which transported it to Des Moines, and
on the evening of June 1, 1913, placed it on the defendant's
track at Eleventh Street in said city, promptly notifying
the defendant of such delivery, and thereupon the defend-

ant moved the car over its line to its destination at the warehouse of the consignee. The further evidence offered by plaintiff tended to show that, on the same evening of the delivery of the car as aforesaid, a fruit inspector with another witness inspected the car and its contents and found the loading and bracing of the crates in good order, the ice bunkers full and the temperature at about 50 degrees. The inspector opened four·or five of the top crates at each end of the car, and made notation that "the berries were fairly cool, overripe. Crates show considerable soft berries. Slight mold on a few crates." On the following day, and after the car had been placed at the warehouse of the consignee for unloading, it was again examined by the same inspector and others, disclosing the fact that "one of the ice bunkers had been knocked loose, allowing the ice to fall into the car. The entire load had been shoved towards the other end of the car, crushing in a great number of cases, and the bracing of the car was broken loose."

Another witness says:

"The bracing between the two sections of berries was broken and some of the crates were broken. There were broken ones all through the car, but mostly in the east end."

The crates appear to have been packed in either end of the car, leaving an empty space opposite the side doors, and the two sections of the load were held in place by a system of bracing across the empty space. The inspector who was present at both examinations says that, on the second occasion, "the bracing was knocked loose and buckled up and shoved west. The berries were knocked clear across the aisle to the west end and mashed up. The ice was rolled out of the ice box on top of the berries. The crates of berries that were in the east end had been pushed toward the west and covered the entire vacant space. I didn't mean that they were all pushed toward the west. I intended to

say that the top row of crates was shot over toward the other and the broken crates were smashed up against the crates which were originally in the west end of the car. The space was full with bracing and berries. I couldn't say how many crates were broken."

The only testimony offered by the defendant was that of its own inspector, who did not see the shipment until the second day, but before the car was unloaded. He says he found that "the bracing in the center of the car was partly broken and laying over on the west end of the load in the car, and the partition which separates the ice in the east end from the interior was leaning. The top tiers of the load in the east end had been shifted to the west, and some of them fallen down on the floor."

He further says he watched the unloading and counted the injured crates, and that, except 7 which were crushed and 25 partly broken, none were so crushed "as to be noticeable." Speaking of the condition of the berries, he says:

"The few cases I examined showed a little mildew and overripe. I examined the top tiers. Not all I looked at were mildewed, but in all I examined, the berries were sunken a little at the top, showing what we called leaky berries, overripe."

No evidence was offered by defendant in explanation of the apparent violence suffered by the car and its load after the inspection thereof on the evening of June 1st, and before the second inspection made on the following morning; nor was any evidence offered tending to show that the car or its load had sustained such injury before its delivery into the defendant's possession.

At the close of the evidence, the plaintiff filed a motion for a directed verdict as follows:

"Comes now the plaintiff at the close of all the testimony and moves the court to direct a verdict in its favor

for the amount of the judgment rendered in the court of Buchanan County, Missouri, in the case referred to in the record, with interest thereon from the date of said judgment, and for the sum of court costs and expenses as shown by the exhibits offered, with interest thereon from the 15th day of August, 1914, for the reason that the evidence shows that the plaintiff in the suit of Duncan et al. vs. St. Joseph & Grand Island Railroad recovered a judgment against the plaintiff on account of the loss of the said shipment of berries which occurred while the said berries were in the hands of this defendant, and that the evidence shows the same without dispute."

The motion was sustained, a verdict returned for plaintiff, as directed by the court, and from the judgment entered thereon, the defendant appeals.

I. The first proposition advanced for a reversal of the judgment below is that, in so far as the Acts of Congress regulating the liability of carriers of interstate commerce afford any support for the claim made by the plaintiff in this case, they are unconstitutional and void.

1. APPEAL AND ERROR: presentation and reservation of grounds: necessity: constitutional law.

The particular statutory provision against which this objection is directed is that part of Section 7 of the Act of Congress approved June 29, 1906, amending an act entitled "An Act to Regulate Commerce," approved February 4, 1887, as follows:

"That the common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall ex-

empt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, *as may be evidenced by any receipt, judgment, or transcript thereof."*

The particular point made in argument is that, while the provision which makes the initial carrier liable to the shipper for any loss, damage or injury to a shipment occurring upon the line of any connecting carrier to which such shipment may pass is concededly constitutional and valid, yet the further provision by which the initial carrier, having paid the damage so sustained, is declared "entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury as it may be required to pay to the owners of such property, *as may be evidenced by any receipt, judgment or transcript thereof,"* if enforced according to its literal terms, constitutes a taking of property without due process of law, in contravention of the Fifth Amendment to the Constitution of the United States.

We find it unnecessary, under the record here presented, to inquire whether this constitutional question has already been settled by the court of last resort, or, in the absence of any such controlling precedent, to express any opinion thereon. A search of the abstract filed by the appellant discloses that the point now pressed upon our attention

was in no manner raised or suggested in the court below, by pleading, motion or demurrer, or by objection to the testimony or by motion for new trial, and the rule is too well settled to require citation of authorities that an objection to the constitutionality of a statute, not properly raised in the trial court, will not be considered upon appeal.

II. Appellant further argues that, upon a proper consideration of the act of Congress above mentioned, the judgment against the initial carrier is to be considered binding upon a connecting or terminal carrier only in cases to which such connecting or terminal carrier has been made a party, and that the trial court therefore erred in treating the judgment rendered in Duncan's suit against the plaintiff as conclusive upon the defendant.

2. COMMERCE: interstate commerce: damages: judgment against initial carrier: conclusiveness against connecting carrier.

We think it is to be said that the trial court made no express ruling holding the judgment against plaintiff binding upon defendant, nor is such the necessary implication of any of its rulings. It is true the court admitted the judgment in evidence, but that is not the equivalent of holding that it is conclusive of the defendant's liability. Neither is such the effect of the ruling directing a verdict for the plaintiff. The judgment against the plaintiff entered in the Missouri court is neither in form or effect a judgment against the defendant in this case, nor was it given any such effect by the trial court. The right of the plaintiff in this action to recover depends not upon the judgment mentioned, but upon the sufficiency of the showing that the loss, injury or damage for which such judgment was entered occurred on the defendant's line of railroad, and, so far as that issue is concerned, the adjudication between Duncan and the plaintiff is of no force or effect against the defendant. But when the plaintiff had offered evidence tending to show, and, as we think, conclusively showing, that the

injury to the shipment was sustained while in the possession and control of the defendant, then the statute makes the judgment in favor of Duncan competent evidence upon the further question as to the amount of plaintiff's recovery. Such is the very obvious meaning and intent of the statute, and the court is not at liberty to nullify its effect by any strained or unnatural construction of its language. As the statute makes the initial carrier primarily liable to the shipper for the default or negligence of any and all connecting carriers, as well as its own, it is thereby compelled, when sued upon a claim of that nature, to defend not alone its own conduct in the premises, but the conduct of all the carriers making up the connected line of through transportation. Such being the case, it is a reasonable conclusion that a judgment obtained by a shipper against such initial carrier for loss, injury or damage to his shipment must operate as a final adjudication of the amount of damages so sustained wherever it may have occurred upon such connected lines, and that, in any subsequent litigation between the several carriers upon the question of ultimate liability, the amount of damages so ascertained will not be open to question, save, of course, upon plea and proof of collusion or fraud. The several carriers constituting a through line of transportation are to a degree engaged in a common enterprise, and the statute makes the initial carrier in a very substantial sense the representative of all in controversies with a shipper. As we have before observed, in defending against such claims it stands for all the carriers, because its primary liability is for the safe carriage of the shipment over the entire connected line. Having done its duty in this respect, and paid the damages adjudged against it, it brings itself very clearly within the protection of the statute which gives it in express terms the right to reimbursement from "the common carrier, railroad or transportation company on whose line the loss,

damage or injury shall have been sustained," and the amount which it is so authorized to demand and collect is the amount it has been *required to pay to the owners of the property as may be evidenced by any receipt, judgment or transcript thereof.*

Applying the law as thus stated to the case before us, we find that plaintiff has pleaded the fact that, as relates to the shipment of Duncan, it was the initial carrier; that it delivered such shipment to the next connecting carrier, the Chicago & Great Western Railway Company, which in turn delivered it to the terminal carrier, the defendant herein; that Duncan subsequently brought suit and recovered judgment against plaintiff as such initial carrier for injury and damage to his shipment in the course of such transportation, which judgment plaintiff has paid. It further alleges that the injury to the shipment occurred on the defendant's line, and, by reason thereof, defendant is the carrier ultimately liable for such damages, and is therefore under obligation to make reimbursement to plaintiff for the amount it has been compelled to expend on that account. The defendant has met this petition and demand with a simple denial. It has not attacked or sought to avoid the judgment as collusive or fraudulent, or set up any other affirmative defense. On the trial it was conceded that plaintiff was the initial carrier; that defendant was the terminal carrier; and that the shipment was received from Duncan in good condition. The fact that Duncan sued and recovered judgment against plaintiff was shown without dispute or challenge, except defendant's general objections to the relevancy and competency of the evidence, objections which, for reasons already stated, were not well taken. The sole question left at issue was raised by the defendant's denial of the allegation that the injury to the shipment occurred on its line, and in this respect the evidence is practically without dispute that the injury for the ship-

ment for which Duncan recovered judgment was received after the car had been delivered to the defendant by the Chicago & Great Western Company.

3. COMMERCE: interstate commerce: damages: re-coupment by initial carrier: evidence.

In this connection, we may properly consider appellant's assignment of error on the trial court's ruling admitting in evidence the record of the proceedings and judgment in Duncan's action against the plaintiff. There was no error in this respect. The statute, as we have seen, makes the judgment proper evidence; but to the proper identification of the judgment as an adjudication of the kind and character contemplated by such enactment, so much, at least, of the record may be admitted as will disclose the issues tried and the questions decided. To that end, the pleadings in that case, the court's charge to the jury, with the verdict and judgment, are quite essential. Of course, the record of the evidence there given is not competent as independent testimony of the facts there stated, but it is proper to be considered as showing the scope of the thing adjudicated. See *Washington Gas Light Co. v. District of Columbia*, 161 U. S. 331.

Now the petition in the Duncan case shows that the demand for a recovery therein was as the plaintiff alleges it to have been, and the answer there pleaded by the plaintiff herein not only denied the claim, but pleaded affirmatively, for itself and for the connecting carriers (of which, as we have said, it was, for the purposes of the suit, the representative), that each and all of them transported the shipment with due care, and, if the berries reached their destination in bad condition, it was because of their over-ripeness and inherently perishable nature, a condition which was beyond control of the carriers. Turning, then, to the charge of the Missouri court in submitting the case, we find that the jury was specifically instructed as follows:

"(3) You are instructed that the plaintiffs cannot

recover in this case except for the value of the berries which may have been destroyed by reason of the rough handling of the car by the defendant, provided you believe there may have been such rough handling; and in determining the amount of your verdict, you will ascertain the number of crates of berries which were shown by the testimony to have been mashed or otherwise injured, and render your verdict for the value of such berries only."

It must be assumed that the jury obeyed the instruction, and that Duncan's recovery was based solely on the damages resulting to the berries by reason of the undue violence or rough handling of the car in which they were shipped. Reference to the evidence shows that the only testimony of violence or rough handling given in that case was that concerning the broken and disordered condition of the car and its load of crated berries as disclosed by the inspection at Des Moines. It is thus made clear that Duncan's recovery was based solely on the injury to the berries which the testimony offered in the present case shows beyond reasonable doubt was sustained by the shipment after it was delivered to the defendant, and before its delivery to the consignee, and not because of any loss resulting from the inherently perishable nature of the fruit. The latter question is, therefore, not involved in plaintiff's demand for reimbursement. Duncan recovered judgment against plaintiff as the initial carrier for damages occasioned by the rough handling of the car. In this case, plaintiff shows without dispute that the rough handling which subjected it to such recovery occurred on the defendant's line. Under the statute, in the absence of any impeachment of the judgment for collusion or fraud, that judgment is the measure of the defendant's liability, and the proof offered by defendant tending to show the bad quality of the fruit, independent of the injury done by the improper handling of the car, cannot affect the amount of plaintiff's recovery.

III. We have finally to consider the effect of the notice given by plaintiff to defendant of the suit brought by Duncan. We have thus far omitted mention of this feature of the case, because, in our judgment, the plaintiff's right of recovery in no way depended thereon. The Federal statute, we repeat, fixes and prescribes the terms upon which the initial carrier, having been subjected to a recovery of damages by a shipper, may in turn recover indemnity or reimbursement from a connecting carrier, and the giving of such notice is not made a condition thereof. The court has no authority to add to or take from the prescribed terms. This is not to say that it is not proper practice for a defendant who is exposed to liability upon which he claims a third person is bound to hold him harmless, to serve such person with notice of the pendency of the action and request him to appear and assume the defense. Ordinarily, if a third person who is in fact liable over to the defendant as claimed, neglects or ignores the notice given him, he does so at his peril, and will be held to indemnify the defendant to the full extent of the judgment rendered against the latter. This is not because such notice brings the person notified within the jurisdiction of the court, or because the judgment entered against the defendant is in any proper sense a judgment against him also, but is rather because, having neglected his duty to protect the defendant against loss on his account when given opportunity to do so, he will be estopped, when sued by the defendant for reimbursement, to deny that the judgment against the latter is for the correct amount. The suit by plaintiff against the defendant in this action is not in fact or effect a suit upon the Duncan judgment. It is a suit upon a demand for reimbursement for money paid to discharge a claim on which the defendant is alleged to be ultimately liable as the principal debtor.

**4. COMMERCE: interstate commerce: damages: action against initial carrier: notice to guilty connecting carrier to defend.**

If the fact be shown that the injury to the shipment for which Duncan recovered his judgment occurred on defendant's line,—and of this, as we have said, there can be no question,—then defendant, by virtue of the statute, is the party ultimately liable as indemnitor of the plaintiff. Being such, the judgment against plaintiff is the measure of the amount in which it must respond. Assuming, then, which will not be denied, that each connecting carrier stands in the relation of an indemnitor of the initial carrier for all damages which the latter may be compelled to pay for an injury to a shipment occurring upon the line of the former, then, even if the statute did not provide, as it does, that the liability of such indemnitor shall be measured by the judgment in favor of the property owner, we are of the opinion that, under the established rule and practice to which we have referred, the same result would follow where the initial carrier gives notice to the connecting carrier which is ultimately liable, and affords it an opportunity to assume or assist in the defense of the suit by the property owner.

One reason, and perhaps the main reason, for the statutory provision, as well as for the rule and practice at common law to which we have referred, is to avoid a multiplicity of suits. There is no good reason why both the question of the primary liability of the initial carrier and the ultimate liability of the connecting carrier should not be settled and adjudicated in the action brought by the shipper. On the contrary, its justice and propriety are too manifest for serious question. The burden which the statute places upon the initial carrier, making it primarily liable to the shipper for the negligence and default of every connecting carrier, no matter how many or how difficult it may be to fix or apportion the blame, is at best an onerous one, and it is in every way appropriate and desirable that the right of the shipper

to recover and the designation of the carrier which is ultimately liable may be settled in one action.

While appellant has argued other propositions, they are all so related to those we have discussed as to be governed by the conclusions already announced, and do not require further specific consideration.

We find no reversible error in the record, and the judgment of the district court is—*Affirmed*.

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.