Steve D. PETERS, Plaintiff,

v.

Fae LYONS and S. S. Kresge Company, a
Michigan Corporation, Defendants.

Fae LYONS' ESTATE, Cross Plaintiff-
Appellee-Cross Appellant,

v.

S. S. KRESGE COMPANY, a Michigan Cor-
poration, Defendant-Appellant-
Cross Appellee.

WESTERN FIRE INSURANCE COMPANY,
FORT SCOTT, KANSAS, Intervenor-
Appellee-Cross Appellant,

v.

S. S. KRESGE COMPANY, a Michigan Cor-
poration, Defendant and Cross Defendant-
Appellant-Cross Appellee.

No. 53394.

Supreme Court of Iowa.

June 10, 1969.

O'Connor, Thomas, Wright, Hammer & Bertsch, Dubuque, for S. S. Kresge Co., defendant, cross-defendant-appellant-cross appellee.

Fuerste & Carew, Dubuque, for Fae Lyons' Estate, cross plaintiff-appellee-cross appellant, and Western Fire Insurance Co., intervenor-appellee-cross appellant.

BECKER, Justice.

This action for indemnity or contribution was tried to the court as a law action and resulted in judgment for plaintiff-intervenor on the indemnity count. A prayer for attorney's fees for defense of the original action was denied. Both sides appeal.

The original injured party was Steve D. Peters. We first recount the facts pertaining to him. Fae Lyons owned a German shepherd dog, named Sabre, which she kept chained to a tree in her yard in Dubuque, Iowa. Sabre was a strong and active canine about two years old. Mr. Peters, a new neighbor, visited the Lyons' home to use their telephone. He noticed the dog chained to a tree when he entered the home. Having accomplished the purpose of his visit Mr. Peters left the Lyons' home and was proceeding out of the yard when Sabre, no longer tethered, attacked him, knocked him down and bit him. The visitor fought the dog until the Lyons rescued him but he received a broken hip and other injuries.

Later investigation showed the choke collar or chain used to secure Sabre had broken. This collar had been purchased from defendant, S. S. Kresge Company, a few days earlier. Evidence was produced tending to show the chain was defectively welded and would not sustain the strain that could be expected from the lunging of a 120 pound dog.

Actual purchase of the chain was made for Mrs. Lyons by her son. At the time of purchase he told the uniformed clerk he needed a chain to restrain a 100 to 120 pound dog. The clerk picked out the chain and stated, "It's the best we've got, that ought to do it."

Mr. Peters sued Mrs. Lyons and S. S. Kresge Company. Mrs. Lyons cross-petitioned against S. S. Kresge Company seeking indemnity by reason of breach of implied warranty.

At this stage of the case Western Fire Insurance Company, as Mrs. Lyons' insurer, settled Mr. Peters' claim for the sum of $10,000. and Mr. Peters dismissed his petition as to Mrs. Lyons. S. S. Kresge Company and Western Fire Insurance Company became the protagonists and will be referred to as Kresge and Western respectively. The settlement is conceded to have been reasonable, as to amount, under the circumstances. Western then filed a petition of intervention setting up its liability policy, settlement with Peters on behalf of Lyons, and claim to indemnity as subrogee of Lyons.

Kresge moved to dismiss the original petition against it because both defendants were discharged by Peters' release to

Lyons. The court sustained this part of the motion and neither side complains.

The motion to dismiss also covered Mrs. Lyons' cross-petition against Kresge for the reason that Mrs. Lyons was no longer the real party in interest. She had suffered no loss because Western had fully indemnified her. This part of the motion was overruled and Kresge challenges the ruling.

The third portion of the motion sought dismissal of Western's petition of intervention because it had not complied with the statute and therefore had no right to intervene; i. e., in the words of rule 75, Iowa Rules of Civil Procedure, Western failed by not "joining with plaintiff or defendant or claiming adversely to both". The trial court also overruled this part of the motion and Kresge relies on the claimed error.

I. We first consider these procedural problems. Kresge contends, and Western does not seriously dispute, that Mrs. Lyons ceased to be a real party in interest when settlement was made with Peters. Rule 2, R.C.P. provides: "Every action must be prosecuted in the name of the real party in interest. * * *."

Western counters by quoting rule 16, R.C.P., "Transfer of an interest in a pending action shall not abate it, but may be the occasion for bringing in new parties."

■ Under this rule the statement in Richardson v. Clark Bros., 202 Iowa 1371, 1372, 212 N.W. 133, 134 is correct: "An action is not abated by the transfer of any interest therein during its pendency, and new parties may be brought in if necessary. (citations.)

"Substitution of parties plaintiff may, and should always, be granted, unless the defendant will be in some way prejudiced thereby." (citations.)

Both parties cite Grings v. Great Plains Gas Company, Iowa, 152 N.W.2d 540, 546, recognizing the rule: "Defendant may question whether plaintiff is the real party

in interest when it is necessary to protect him from 'harassment, annoyance or vexation at the hands of other claimants to the same demand or for the same cause, or to protect himself from another suit on the same cause by a different party. * * * or in order that defendant may avail himself of the defenses and counterclaims which he has against the real party in interest, * * * or in order that defendant's payment to plaintiff or plaintiffs' recovery as against him will fully protect him from claims of third persons or in the event of another action on the same cause. *On the other hand if such defenses and counterclaims are open to defendant as against plaintiff, and defendant is fully protected against further liability on the same cause of action, defendant may not object on the ground that plaintiff is not the real party in interest.*'" (Emphasis added.)

■ It appears Kresge was fully protected. It does not point out wherein it was inhibited in any way by virtue of a lost defense or counterclaim. We see no precedential or logical reason why the trial court should not have proceeded to dispose of the remaining issues before it in the initial case. Western's petition against Kresge for indemnity was not subject to motion to dismiss.

II. As to Western's petition of intervention, rule 75, R.C.P. reads: "Any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene at any time before trial begins, by joining with plaintiff or defendant or claiming adversely to both."

■ Intervention is remedial and should be liberally construed to reduce litigation and expeditiously determine matters before the court. In re Incorporation of Town of Waconia, Iowa, 248 Iowa 863, 869, 82 N.W.2d 762.

■ Western was interested in the result of the indemnity claim against Kresge and in the success of Mrs. Lyons. West-

ern's petition actually joins with Mrs. Lyons' claim against Kresge although it doesn't use the statutory language *in haec verba*. The trial court's conclusion included: " * * *. It is true that, as initially plead, Western did not, in so many words, join with Fae Lyons but their attorney was her attorney, the phraseology of the petition of intervention clearly adopts her cross-petition and they did subsequently expressly join with her."

Under the circumstances here we hold the court's ruling on the point was correct.

III. Kresge's remaining assignments of error involve substantive law. We do not treat them in the order presented but deal first with the question of implied warranty which was the basis of the court's ruling. The question of whether there was a breach of warranty, express or implied, is largely a question of fact. Ertl Company v. Lange Plastics Company, Iowa, 158 N.W.2d 93, 98. Since this is a law case the trial court's finding of fact are binding on us if supported by substantial evidence. Rule 344(f) (1), R.C.P. Our function in reviewing the trial court's findings is not to weigh the evidence but to decide whether the finding is supported by the substantial evidence required. Ertl Company v. Lange Plastics Co., supra.

This cause occurred before July 4, 1966, the effective date of the Uniform Commercial Code contained in what is now chapter 554 of the *1966* Code. Section 554.16, Code, *1962* reads in part: " * * *. 1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.

"2. Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality."

Under the above statute there may be an implied warranty of reasonable fitness of an article notwithstanding seller's lack of knowledge it does not comply with the warranty and the difficulty of discovering this fact. Good faith and lack of seller's negligence are no defense. Reed v. Bunger, 255 Iowa 322, 334, 122 N.W.2d 290. The tendency of the later cases in this court is to enlarge the responsibility of the seller, restrict application of the doctrine of "caveat emptor", and extend the doctrine of implied warranty in sales of personalty. Reed v. Bunger, supra; Farmers State Bank v. Cook, 251 Iowa 942, 947, 103 N.W.2d 704, 707.

Subsections 1 and 2 of section 554.16, Code, 1962, cover two types of implied warranty described in 2 Frumer and Friedman, Products Liability, section 19.03(2), page 502.8 as follows:

"The basic distinction between a warranty of particular purpose and a warranty of merchantability can best be explained by defining the latter warranty. A warranty of merchantability has been defined as meaning 'that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold.' Merchantability has similarly been defined as meaning goods 'reasonably suitable for the ordinary uses for which goods of that description are sold.' The key phrases in these definitions are 'general purpose' and 'ordinary uses.' "

There is substantial evidence to support the trial court's finding of implied warranty of fitness under Code section 554.16(1). The Lyons boy was asked by Mrs. Lyons to buy the collar. She gave him the money and accompanied him to the store but was not present for the actual purchase. He testified: " * * *. I told her I had a German shepherd and he weighed then 100 to 120 pounds. I inquired if they had a chain to restrain dogs

of this kind. It was the K-Mart Store located in Dubuque, Iowa on Dodge Street. * * *. After I went into the store and inquired about the chain, she showed me some collars. I told her what I needed, I wanted a chain collar and she picked one out. I said this here would be strong enough to restrain a dog of that size and she said yes. She added, 'It's the best we have got, that ought to do it.' Then I bought it and I paid for it and I received a sales receipt for the chain."

■ Kresge contends the issue of implied warranty of merchantability (subdivision 2 of section 554.16) is not in the case because the pleadings are not broad enough to cover such issue and the case was not tried on that theory. We find merit in Kresge's contention and do not consider whether the evidence sustains a finding of breach of implied warranty of merchantability.

■ IV. Kresge strongly argues there was no evidence of reliance, a necessary element to section 554.16(1). Drager v. Carlson Hybrid Corn Co., Inc., 244 Iowa 78, 84, 56 N.W.2d 18, 22, considers the point in some detail: "It is not necessary that the buyer testify in so many words he relied on the seller's skill or judgment. Reliance may be shown by the circumstances of the case. The buyer's reliance on the seller need not be a total reliance. The buyer may rely on his own judgment as to some matters and on the seller's skill and judgment as to others." (Citations.)

As indicated in Ertl Company v. Lange Plastics Company, Iowa, 158 N.W.2d 93, 98, it is the circumstances of each case that are all important and on such circumstances the trier of fact must make its finding. The Ertl case involved manufacturers with a high degree of expertise on both sides, secret processes, testing and revision of the product in the process of placing the order. Under the evidence there the trial court found reliance had not been proved by a preponderance of evidence and we affirmed.

The facts in this case are quite different. The collar was purchased from the pet department of a large store. The purchaser was a member of the general public with no particular expertise in the field. The size and kind of dog to be restrained were made known to the seller. The finder of fact concluded reliance had been satisfactorily demonstrated. Again we affirm.

, In Doden v. Housh, 251 Iowa 1271, 1277, 105 N.W.2d 78, 81, we spoke of reliance by farmers on the operator of a sale barn selling livestock in the following terms: "It would seem to be a fair statement that all farmers patronizing sale barns would rely on the operator to see to it nothing but healthy animals were brought into the sale ring." Such a statement, fairly applied to the seller of animals, is also applicable to the seller of the restraint for animals.

The Supreme Court of Washington considered the problem of implied warranty of fitness under the uniform sales act in Ringstad v. I. Magnin & Co., 39 Wash.2d 923, 239 P.2d 848, 850, 851, (1952). The case differs from instant case in that it involved a piece of wearing apparel. However, it turned on the identical subsection of the uniform sales act considered here; it did not involve negligence which was rejected by the court as a grounds for recovery.

Defendant's position in the Washington case was: "Respondent urges that prior to the uniform sales act the rule of *caveat emptor* would have applied to a sale such as that alleged here, and that it was not intended by the uniform sales act to extend the implied warranty of fitness to merchandise sold over the counter, inspected and selected from a quantity stock. Respondent concedes that we have applied the implied warranty of the statute to sales of food, but insists that food cases represent an exception to the rule."

The court gave effect to the cited sales act section, our section 554.16(1), as follows: "There are several jurisdictions which, clinging tenaciously to the rule of *caveat emptor,* insist that the uniform sales

act, despite the plain wording of the subsection now under consideration, does not apply to retail sales made over the counter, where the merchandise is inspected by the buyer and selection is made from a quantity stock. Other jurisdictions do make the warranty of implied fitness applicable to sales of wearing apparel, and on a basis which seems to us logically sound." (loc. cit. 239 P.2d, page 851).

Therefore the Washington court held: "It is obvious that an article of wearing apparel is to be worn, and that purpose must have been known to the seller. The fact of the sale itself is sufficient to indicate that the seller knew the particular purpose, and thereby satisfies the first prerequisite." (loc. cit. 239 P.2d, page 850). We think the same reasoning applies to purchase of a dog chain to be used for its intended purpose.

Other Iowa cases speaking on the same subject are Dailey v. Holiday Distributing Corporation, Iowa, 151 N.W.2d 477, 486: " 'In this connection it must be pointed out that the tendency of all modern cases on warranty is to enlarge the responsibility of the seller and restrict the application of the maxim of "caveat emptor." 46 Am. Jur., Sales, § 339, p. 522; 77 C.J.S. Sales § 315, page 1160.'

"It is evident an implied warranty of fitness and suitability for intended use was by law woven into the fabric of the transaction here involved."

In Parsons Band–Cutter & Self Feeder Company v. Mallinger, 122 Iowa 703, 707, 98 N.W. 580, 582, we said: " * * *. The record makes it clear that the machine in question was intended to be devoted to a special purpose—that of feeding a threshing machine. This was the understood purpose for which it was desired by defendant, and, it may be added, the character thereof was such that as a machine, at least, it could not have been adapted to any other use. In a case presenting such facts, the law implies a warranty to the effect that the machine is adapted to the use intended, and that it will reasonably perform the service required."

2 Frumer and Friedman, Products Liability, section 19.04(4) (b), pages 524.1, 524.2 asserts the better view holds a showing that the purchaser relied on the skill and judgment of the retailer in the "general selection by him" of the products he offers for sale is sufficient and cites Doden v. Housh, supra, as one of the authorities for the assertion. Cf. Kurriss v. Conrad & Co., 312 Mass. 670, 46 N.E.2d 12.

V. Kresge also urges inspection of the chain by Mrs. Lyons negatives the assertion of reliance on the seller's judgment. Mrs. Lyons said: "When Frank showed me the chain, I thought it looked sturdy and should hold the dog. I relied on the appearance of that chain as one which would hold Sabre." We have held the buyer may rely on his own judgment as to some matters and on the seller's skill and judgment as to others. Drager v. Carlson, supra. The engineer testified his examination of the chain showed the links to be welded but the welding was poorly done. Only about 10 to 30 percent of the cross-section of each link had been joined instead of 100 percent as is ordinary for such a chain. The joinders also had weld porosity which weakened the weld. The trial court could find from the testimony of both the veterinarian and the engineer that a layman's ordinary inspection would not reveal the defects in the chain.

VI. Kresge's next argument asserts the damages here must be limited to the natural and probable consequences of the breach of warranty and such as were within the contemplation of the parties. This rule, it is argued, precludes recovery for consequential damages. In this respect the rule of damages for breach of warranty is said to be different from the rule of damages for negligence. But we said in Miller v. Economy Hog & Cattle Powder Co., 228 Iowa 626, 640, 293 N.W. 4, 11: " * * *. Under such warranty the measure of damages would be the same as in

tort." Other authorities agree: "The measure of damages in warranty and negligence cases is for all practical purposes, the same." 2 Frumer & Friedman, Products Liability, section 16.01(2), pp. 3–11; Vold on Sales, section 95, p. 456; Cf. Breitenkamp v. Community Co-op. Assn., 253 Iowa 839, 844, 114 N.W.2d 323.

The controlling rule is statutory. Section 554.70(6), Code, 1962, reads: "The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." See De-Waay v. Muhr, Iowa, 160 N.W.2d 454, 458, 459, for interpretation of the identical rule as it applies to breach of contract under the Sales Act, section 554.68, Code, 1962.

██ Not all dogs are mild and even-tempered, the choke chain is designed to restrain the dog and if it fails, injury to someone is quite likely to occur. Otherwise the chain, a rather harsh device, wouldn't be needed at all. Peters' and Lyons' loss, both directly and naturally, resulted from the breach of warranty.

VII. Kresge also argues that indemnity isn't available here because our dog statute, section 351.28, imposes absolute liability, which is a nondelegable duty. If the dog gets loose the owner cannot shift the blame to another. It is true the statute imposes absolute liability. Puls v. Powelson, 142 Iowa 604, 606, 121 N.W. 1, so holds: "* * *. The action was brought under the statute. The statute creates an absolute liability on the part of the owner of a dog for damages done by him, regardless of knowledge or negligence on the part of the owner. In this respect the statute may be said to be drastic, though in the interest of public policy."

If there is a nondelegable duty growing out of this section, a point we do not decide, the duty runs to the injured party. It does not affect a controversy between claimed wrongdoers.

██ The breach of nondelegable duties may constitute a basis for an action in indemnity against a third person who creates a dangerous condition. Harper and James, The Law of Torts, Vol. I, section 10.2, page 724.

██ To the injured plaintiff, it makes no difference how the dog got loose. But as between the dog owner and the person whose wrong is claimed to have caused or contributed to the loss, the statutory duty imposed on the dog owner will not, as such, protect the claimed wrongdoer.

This is not the situation considered in Lattner v. Immaculate Conception Church, 255 Iowa 120, 129, 121 N.W.2d 639. There defendant urged the violation of a statute does not amount to negligence unless the plaintiff was a member of the class the statute is designed to protect and the harm is one the statute is designed to prevent. We recognized the rule has much support but declined to follow it, primarily on the authority of Hansen v. Kemmish, 201 Iowa 1008, 1012, 208 N.W. 277, 279, 45 A.L.R. 498, where the Iowa rule is stated: "A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance." As between an injured party and the violator of a statute or ordinance, we adhere to those precedents. This does not mean the violator of a statute may not turn for indemnity to the person who allegedly caused him to be in violation of the statute.

The situation is closely analogous to Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1143, 49 N.W.2d 501, 506, where defendant Bus Company, liable to the injured party by reason of the statutorily imposed high degree of care owed by a common carrier to its passenger, could seek recovery over from another: "One who is liable only by reason of a duty imposed by law for the consequences of another's negligence may recover over against the active perpetrator of the wrong. * * *."

In Iowa Power and Light Company v. Abild Construction Company, 259 Iowa 314, 322, 323, 144 N.W.2d 303, 308, we set forth reasons for permitting indemnity: " * * *. (1) express contract, (2) vicarious liability (respondeat superior or statutory liability imposed on the owners of automobiles), (3) breach of an independent duty running from the employer to the third party, and (4) active (primary) as opposed to passive (secondary) negligence." (cases cited). We then said: "The right of indemnity in the first three instances is based on the relationship between the employer and the third party. * * *.

"Only in those instances in which the party passively negligent has been allowed indemnity from the party actively negligent, do you have a situation in which 'indemnity is only an extreme form of contribution.'" It was not necessary in Iowa Power and Light Company v. Abild Construction Co., supra, to further examine the various situations under which the fourth category might apply.

It is generally held the right to indemnity is not limited in tort cases to the active-passive negligence situation, but applies to other situations as well.

Judge Hanson in Epley v. S. Patti Construction Company, 228 F.Supp. 1, 5, (1964) states: "Patti also claims that it is entitled to common law indemnity from Carstens. Generally, four different situations have been recognized which, if found to exist, will allow one negligent person to be indemnified by another notwithstanding any contract for indemnity:

"(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

"(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged. Restatement Restitution, Sec. 90.

"(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

"(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

The Iowa court has accepted this doctrine of indemnity.

" * * * In Rauch v. Senecal, 253 Iowa 487, 112 N.W.2d 886, the court held that a person does not have a common law right to recover expenses and attorney's fees from a co-defendant or cross-defendant if that person is defending his own act of primary negligence. Failure to warn and failure to inspect are primary acts of negligence. The Rauch case holds that this is so even though the jury finds in fact that the person is not guilty of any primary acts of negligence. Therefore, under the Iowa law, it appears that a person might be able to recover common law indemnity and still not recover attorney's fees. It might depend upon whether primary acts of negligence were alleged."

In somewhat more general terms, the Supreme Court of Minnesota in Larson v. City of Minneapolis, 262 Minn. 142, 114 N.W.2d 68, 73, said: " * * *. We recognize that indemnity is essentially an equitable doctrine which does not lend itself to hard-and-fast rules. Being an equitable doctrine, its application is particularly appropriate in a case such as this where it is invoked to protect one who is legally liable but morally innocent against one whose wrongful conduct or omission has caused liability to be imposed on him."

The application of these general rules to warranty cases is made in Restatement of the Law, Restitution, section 93(1), page 407: "Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is danger-

ously defective for the use for which it is supplied and both have become liable in tort to a third person injured by such use, the supplier is under a duty to indemnify the other for expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the supplier's care and if, as between the two, such reliance was justifiable."

The trial court relied on Union Stockyards Co. of Omaha v. C. B. & Q. R. R., 196 U.S. 217, 222, 25 S.Ct. 226, 227, 49 L. Ed. 453, which was quoted in Pfarr v. Standard Oil Company, 165 Iowa 657, 146 N.W. 851, L.R.A. 1915C, 336. The United States Supreme Court in the Union Stockyards case observed that where a person creates a nuisance, or furnishes a defective dock, or supplies a defective boiler which blows out because it will not stand the warranted pressure, the one who was finally held liable was the one who created the unsafe or dangerous condition. The trial court concluded: "In this case the defective chain was just like the defective boiler. Defendant Fae Lyons was liable under the Statute because she relied on Kresge in doing her best to restrain what she knew to be a dangerous dog and failed because the product furnished by Kresge failed. It appears logical that she is entitled to recovery over from Kresge."

The finding is consistent with our position in similar cases. Chicago & N. W. Ry. v. Dunn, 59 Iowa 619, 13 N.W. 722 (statutory liability, recovery over against negligent party); Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N.W. 423, 65 A.L.R. 1125 (defective product exposed plaintiff to liability to third party); City of Des Moines v. Barnes, 238 Iowa 1192, 30 N.W.2d 170, (statutory liability passed on to negligent party); Elliott Consol. School Dist. v. Busboom, 227 F.Supp. 858; See also Pfarr v. Standard Oil, 165 Iowa 657, 146 N.W. 851; St. Joseph & G. I. Ry. Co. v. D. M. Union Ry., 180 Iowa 1292,

162 N.W. 812; Restatement, Restitution, § 93; 3 Frumer & Friedman, Products Liability, § 44.02(3); 5 Corbin on Contracts, § 1037; Furnish, Contribution and Indemnity, 52 Iowa L.Rev. 31, 39 (1966); Davis, Indemnity, 37 Iowa L.Rev. 517, 526.

VIII. In its reply brief Kresge argues: " * * *. *The trial court erroneously adopted the view that Fae Lyons' liability was purely vicarious, which runs counter to the legal proposition that the owner of a dog known to be dangerous is actively negligent in keeping such an animal after notice.* See Parsons v. Manser, 119 Iowa 88, 93 N.W. 86, 62 L.R.A. 132 (1903)." We do not so interpret Parsons v. Manser, Cf. Alexander v. Crosby, 143 Iowa 50, 52, 119 N.W. 717, nor do we so interpret the trial court's reasoning.

Kresge claims the mere harboring of a known vicious dog constitutes active negligence. This carries the argument too far. The gist of the action was harm done by the dog which by statute imposes liability on the owner regardless of the owner's efforts to see the dog does no harm. But this does not mean the owner was acting either unlawfully or negligently in harboring the dog. The owner had a right to own and keep the dog. Prudence required she stop it from doing harm. In this effort she used a metal choke chain purchased from Kresge and found by the court to be defective. It is in this narrow area that the trial court properly examined the relative duties of Mrs. Lyons and Kresge for the purpose of determining the right to indemnity. The trial court found Mrs. Lyons was not guilty of a wrong but was liable under the statute in any event, but Kresge was guilty of a wrong (breach of warranty) which occasioned Mrs. Lyons' loss.

IX. Western cross-appeals from the trial court's failure to award it the attorney fees and costs it prayed for as part of its damages.

The general rule for contracts is stated by Corbin: "If the plaintiff can show that the defendant's breach of contract has caused litigation involving the plaintiff in the payment of counsel fees, court costs, and the amount of a judgment, and shows further that such expenditure is reasonable in amount and could not have been avoided by him by reasonable and prudent effort, he can recover damages against the defendant measured by the amount of these expenditures. * * *.

"The cases to which the rule of this Section is most commonly applied are actions for breach of warranty, either warranty of title to land or chattels or warranty of quality. If the defendant sells goods to the plaintiff with an express or implied warranty of kind or quality with reason to know that the plaintiff may resell the goods to a new purchaser with a similar warranty, a judgment for damages will be given against the defendant for the expenses of litigation caused by his breach of warranty." 5 Corbin on Contracts, section 1037, pages 225, 228–229.

We have considered the problem in two recent cases. Turner v. Zip Motors, Inc., 245 Iowa 1091, 1097–1101, 65 N.W.2d 427, 45 A.L.R.2d 1174, recognizes an exception to the general rule that attorney fees are not generally recoverable by a successful litigant against his adversary. The exception is noted by quoting Restatement, Torts, section 914. " 'A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred.' " (loc. cit. 245 Iowa, page 1097, 65 N.W.2d page 431.)

We also said in Turner v. Zip Motors, Inc.: " * * *. It matters not whether the litigation with the third party was prosecuted or defended; the only qualifications are that it must have been caused by a tortious act or breach of contract of the defendant in the suit for recovery of fees or other proper expenses and must have been conducted in good faith and with reasonable ground for belief in a successful outcome. We agree with the able trial court that the rule is proper and based on reason and abundant authority." (loc. cit. 245 Iowa, page 1101, 65 N.W.2d, page 433).

However, a gloss on this exception appears in the later case of Rauch v. Senecal, 253 Iowa 487, 493, 112 N.W.2d 886, 889: " * * *. We are not prepared to say that a defendant who is found not liable in negligence may recover his expenses of litigation by way of indemnity against a codefendant who has been found liable. Our holding is confined to the proposition that a defendant who successfully defends against his own primary negligence, in part at least, may not recover his expenses as indemnity against a co-defendant who is found liable for negligence. This is so even though some charges of negligence were made, and defended, as to which the liability of the first defendant was secondary only to that of the second defendant. * * *."

Apparently on the strength of this later holding the trial court here felt attorney fees should be disallowed. The quoted holding in Rauch v. Senecal, supra, was specifically limited. The present situation was not covered by Rauch. Therefore consideration must be given to whether or not attorney fees are recoverable under the special exception articulated in Turner v. Zip Motors, supra, where the indemnitee not only successfully defended herself against charges of negligence but no part of those charges involved primary negligence in the sense the term is used in Rauch v. Senecal, supra.

In a case involving both contractual indemnity and common law indemnity the federal court for northern district of Iowa, considered this problem but was able to solve it as a contractual indemnity matter. In Epley v. Patti Construction Co., 228 F.

Supp. 1, 5, (1964), Hanson, District Judge, observed: " \* \* \*. In Rauch v. Senecal, 253 Iowa 487, 112 N.W.2d 886, the court held that a person does not have a common law right to recover expenses and attorney's fees from a co-defendant or cross-defendant if that person is defending his own act of primary negligence. Failure to warn and failure to inspect are primary acts of negligence. The Rauch case holds that this is so even though the jury finds in fact that the person is not guilty of any primary acts of negligence. Therefore, under the Iowa law, it appears that a person might be able to recover common law indemnity and still not recover attorney's fees. It might depend upon whether primary acts of negligence were alleged."

Cf. Lennon v. Aluminum Company of America, (S.D., Iowa), 279 F.Supp. 487 and Leingang v. Bottled Gas Corporation, 7 Cir., 332 F.2d 959 (involving Iowa law).

It is clear from Rauch that where an indemnitee is defending himself from a charge of wrongdoing which is not secondary to the indemnitor's wrongdoing, no attorney fees are recoverable. This result is patent as the indemnitor is not responsible for such charges. He had nothing to do with them—was independent of them. Rauch also holds if the charges against the indemnitor involved charges of primary negligence *and* charges of negligence secondary to the indemnitor's wrongdoing, recovery for attorney fees will be denied. The reason for such holding is not given but the difficulties of allocating costs are apparent. In any event we adhere to the rule.

The third problem is not actually decided by Rauch but faces us here. Where the indemnitee's wrong, if any, is wholly secondary to, and flows from, the wrong of the indemnitor, and the finder of fact determines the wrong of the indemnitor is such to require indemnity, can attorney fees and costs be recovered as part of the indemnity claim? Put more simply, what is the situation where the indemnitee was innocent of any primary wrong, and any wrong of which he may have been guilty was wholly secondary? If Turner v. Zip Motors, supra, is to retain any vitality it must be in the area where the indemnitee is innocent of primary negligence.

Before considering these rules as they relate to this case we must consider one further matter. Is the determination of recoverability of attorney fees to be based on the charges made by the injured party or on the facts as found by the court or jury? As noted by Judge Hanson, under Rauch v. Senecal, supra, it may be argued the determination is to be made on whether primary acts are alleged. We reject this basis for such determination. First, the indemnitee may wisely settle with a claimant before suit is actually filed, indeed, it may be his duty to do so under certain circumstances, and attorney fees may be incurred in the process. Second, the determination of this matter as between indemnitor and indemnitee should not rest on the presence or absence of such pleading by a third party, who through an overabundance of caution or optimism alleges more (or less) than he can prove. The decision must be made on the facts as found by the trier thereof.

In view of Rauch v. Senecal, supra, the trial court (not unreasonably) decided: "Fae Lyons and Western were, inter alia, defending a direct charge of negligence of Fae Lyons and consequently are not entitled to recover attorney's fees."

But the court also found Mrs. Lyons did "her best to restrain what she knew to be a dangerous dog and failed because the product furnished by Kresge failed." Under these findings and our analysis of the implications of Rauch v. Senecal, supra, it follows Western was entitled to attorney fees as a matter of law.

The trial court's findings of fact contained the following: "In addition to the

$10,000 paid to Peters on behalf of Lyons, Western paid Fuerste and Carew $995.07 presumably as advanced court costs and attorney fees but the record does not show what these payments were for." We must hold this finding has no substantial support in the record. The only record evidence concerning attorney fees and costs is as follows: " * * *. When the Peters-Lyons' litigation came to an end, we were billed for legal services and expenses, and I received, processed and arranged for the payment of the bill for attorney's fees and expenses in the sum of $995.07. (At this juncture, it was stipulated by counsel for the Intervenor, Western Fire Insurance Company, and counsel for S. S. Kresge Company that the amount of said attorney's fees and expenses, i. e., $995.07, was fair and reasonable for the services performed and the expenses incurred.) The payment of attorney's fees and expenses in the sum of $995.07 by Western Fire Insurance Company was necessitated by reason of the claim of Mr. Peters against Mrs. Lyons and in my judgment was in turn occasioned by the fracture of the dog collar." There was no contra evidence and the whole record supports the conclusion.

Under the evidence and the applicable law of the case we hold the court erred in failing to grant attorney fees and costs in the amount of $995.07.

Affirmed on defendant-appellant's appeal. Reversed and remanded for entry of additional judgment of $995.07 with interest on intervenor-appellee's cross-appeal.

GARFIELD, C. J., and LARSON, SNELL, STUART and MASON, JJ., concur.

LeGRAND, J., dissents from Divisions III, IV, V and IX.

RAWLINGS and MOORE, JJ., dissent from Division IX.