Judy SWEENY, Individually and as the Administrator of the Estate of Edward Sweeny, Deceased, Plaintiff,

v.

John PEASE, Appellant.

John PEASE, Cross-Petitioner-Appellant,

v.

Marvin L. PEXA, d/b/a Pexa Construction Co., Third-Party Defendant-Appellee.

No. 64093.

Supreme Court of Iowa.

July 16, 1980.

Robert W. Wendt, Cedar Rapids, for appellant.

Patrick M. Roby and Carroll J. Reasoner, of Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

Considered by REES, P. J., and UHLEN-HOPP, HARRIS, McCORMICK, and ALL-BEE, JJ.

McCORMICK, Justice.

The question here is whether the trial court erred in entering summary judgment for an employer on an employee's cross-petition seeking indemnity for attorney fees and expenses incurred in successfully defending a wrongful death action brought against the employee by the estate of a coemployee. The employee contends the court erred in holding that he was not entitled to an evidentiary hearing to show the fees and expenses were incurred in defending charges for which he would have been secondarily liable and the employer would have been primarily liable. We affirm the trial court.

John Pease and Edward Sweeny were employees of Marvin L. Pexa, d/b/a Pexa Construction Company. Sweeny was killed in a ditch cave-in while he and Pease were laying sewer pipe at a Cedar Rapids construction site on October 16, 1974. Judy Sweeny brought a wrongful death action

for the Sweeny estate against Pease, alleging the death was proximately caused by Pease's gross negligence in several particulars. Pease cross-petitioned for indemnity against Pexa, alleging that if he were held liable in the Sweeny action it would be because of Pexa's breach of an implied duty to Pease to supervise him competently and not order him to do the work in an unsafe manner.

On Pexa's motion, the wrongful death action was tried separately and resulted in a jury verdict for Pease. Pexa then moved for summary judgment on the cross-petition, alleging that Pease was not entitled to indemnity because the charges against him in the Sweeny action were not secondary to any alleged wrongdoing of Pexa. In resisting the motion, Pease alleged that a genuine issue of material fact existed concerning the nature of the charges in the Sweeny suit. The trial court sustained the motion on the ground that an evidentiary hearing to determine the issue of primary-secondary liability would deprive Pexa of the immunity he was assured under § 85.20, The Code, by reason of having paid workers' compensation benefits for Sweeny's death. In this appeal, Pease renews his contention that he was entitled to a hearing.

■ We have recognized four possible grounds for indemnity: (1) express contract, (2) vicarious liability, (3) breach of independent duty of indemnitor to indemnitee, and (4) secondary as opposed to primary liability. *Iowa Power & Light Co. v. Abild Construction Co.*, 259 Iowa 314, 322–23, 144 N.W.2d 303, 308 (1966). Because of the common liability rule, the primary-secondary theory cannot be used to obtain indemnity for defending a claim made by an employee covered by workers' compensation. *Id.* at 323, 144 N.W.2d at 309 ("This form of indemnity is barred by the common liability rule when one of the tort-feasors is an employer under the Workmen's Compensation Act."). See § 85.20.

■ In an effort to circumvent this barrier, Pease based his claim for indemnity on an alleged breach of independent contractual duty. His cross-petition thus purports to state a claim for indemnity under such authorities as *Blackford v. Sioux City Dressed Pork, Inc.*, 254 Iowa 845, 118 N.W.2d 559 (1962), and *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Pease argues that he does not rely on primary-secondary liability as a basis for indemnity but as the standard for establishing his right to have his attorney fees and expenses in the Sweeny litigation included in his recovery. Because the issue was not raised in the motion for summary judgment, we do not decide whether section 85.20 would preclude Pease's recovery. Nor do we decide whether his theory of recovery is otherwise tenable. Instead we limit our attention to Pease's contention that he was entitled to an opportunity to prove he defended against charges of passive or secondary as opposed to active or primary negligence in the Sweeny suit.

■ The right to indemnity for attorney fees and expenses incurred in defending the alleged tort of another was recognized in *Rauch v. Senecal*, 253 Iowa 487, 491, 112 N.W.2d 886, 888 (1962), and *Turner v. Zip Motors, Inc.*, 244 Iowa 1091, 1097–98, 65 N.W.2d 427, 431 (1954). This principle was held applicable to the defense of allegations of passive or secondary negligence in *Peters v. Lyons*, 168 N.W.2d 759, 770 (Iowa 1968). However, if the person seeking indemnity defended against even one charge of active or primary negligence, indemnity is barred. *Id.; Rauch*, 253 Iowa at 493, 112 N.W.2d at 889.

■ In asserting a genuine issue of fact existed as to the nature of the negligence charged against him, Pease relies on the following statement in *Peters* at 770:

Is the determination of recoverability of attorney fees to be based on the charges made by the injured party or on the facts as found by the court or jury? As noted by Judge Hanson, under *Rauch v. Senecal* . . . it may be argued the determination is to be made on whether primary acts are alleged. We reject this basis for such determination. First, the indemni-

tee may wisely settle with a claimant before suit is actually filed, indeed, it may be his duty to do so under certain circumstances, and attorney fees may be incurred in the process. Second, the determination of this matter as between indemnitor and indemnitee should not rest on the presence or absence of such pleading by a third party, who through an overabundance of caution or optimism alleges more (or less) than he can prove. The decision must be made on the facts as found by the trier thereof.

What Pease overlooks is that *Peters* also recognized that the issue may sometimes be decided as a matter of law without a hearing, although in *Peters* this resulted in a holding for, rather than against, indemnity. *Id.* When reasonable minds could not disagree on the nature of the negligence charged, the issue should be decided as a matter of law. *See Herman Christensen & Sons, Inc. v. Paris Plaster Co.,* 61 Cal. App.3d 237, 251, 132 Cal.Rptr. 86, 95 (1976). Thus we must decide whether Pexa is correct that the issue must be resolved in his favor as a matter of law in the present case.

Before examining the Sweeny charges against Pease, we must identify the distinction between active and passive negligence. In turn, this distinction can best be understood against the backdrop of the distinction between primary and secondary wrongdoing.

We distinguished between primary and secondary wrongdoing in *Horrabin v. City of Des Moines,* 198 Iowa 549, 552–53, 199 N.W. 988, 989–90 (1924):

Where one of two parties does an act or creates a nuisance, and the other, while not joining in the act, is, nevertheless, thereby exposed to liability to one injured, the rule that there is no contribution between joint tort-feasors does not apply; and the one who was the primary and active wrongdoer can be compelled to make good to the other any loss occasioned by the act.

. . . . .

One of the tests in determining whether there may be contribution or indemnity in favor of one joint wrongdoer against another is whether the former knew, or must be presumed to have known, that the act for which he has been held liable was wrongful.

In *Horrabin* an engineer's liability for trespass was held to be secondary to the liability of the city when the engineer's trespass occurred in building a bridge pursuant to a contract with the city on land the city thought it owned but did not. The court held that the act which the engineer was employed to do was "not manifestly wrong."

Another example of primary-secondary liability is in *City of Des Moines v. Barnes,* 238 Iowa 1192, 30 N.W.2d 170 (1947). There the city was liable to an injured pedestrian who fell on an icy sidewalk because of breach of its statutory duty to keep its streets open and free from nuisances. However, the city's liability was held to be secondary to that of the adjacent property owner whose downspout caused the accumulation of ice. The property owner was primarily liable for having created and maintained the dangerous condition. *Peters* provides another illustration of primary-secondary liability. Although the dog owner was statutorily liable for the injury caused when the dog's chain broke, Kresge was primarily liable because its breach of warranty was responsible for the weakness of the chain. *See* 168 N.W.2d at 768.

We approve and adopt this statement from *Builders Supply Co. v. McCabe,* 366 Pa. 322, 325–26, 77 A.2d 368, 370–71 (1951):

The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary lia-

bility is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence . . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrong-doers to the injured person.

.    .    .    .    .

Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. (emphasis in original).

■■■■ The active-passive negligence distinction is predicated on the principles governing primary-secondary liability generally. Active negligence is the negligent conduct of active operations. It involves some positive act or some breach of duty to act which is the equivalent of a positive act. It exists when the person seeking indemnity has personally participated in an affirmative act of negligence, was connected with a negligent act or omission by knowledge or acquiescence, or has failed to perform a precise duty in breach of an agreement. The crucial issue is whether the person seeking indemnity has participated in some manner in the conduct or omission which caused the injury beyond a mere failure to perform a duty imposed by law. In contrast, passive negligence is nonfeasance or inaction, such as the failure to discover a dangerous condition or to perform a duty imposed by law. However, a negligent failure to act when one is charged with a duty to do so is active rather than passive negligence. The difference is qualitative rather than quantitative. *See Rossmoor Sanita-*

*tion, Inc. v. Pylon, Inc.,* 13 Cal.3d 622, 629, 119 Cal.Rptr. 449, 453, 532 P.2d 97, 101 (1975); *Simpson v. Richmond,* 154 Cal.App. 27, 30–31, 315 P.2d 435, 437 (1957); *Gillette v. Todd,* 106 Ill.App.2d 287, 245 N.E.2d 923 (1969); *Bush Terminal Bldgs. Co. v. Luckenbach Steamship Co.,* 9 N.Y.2d 426, 430, 214 N.Y.S.2d 428, 431, 174 N.E.2d 515, 517–18 (1961); *Rogers v. Blackhills Speedway, Inc.,* 217 N.W.2d 14, 17 (S.D.1974); 41 Am. Jur.2d *Indemnity* § 21 at 711 (1968); 57 Am.Jur.2d *Negligence* § 4 at 337–38 (1971); 65 C.J.S. *Negligence* § 1(14) at 460 (1966).

■■■ Pease was charged in the Sweeny litigation with gross negligence in six respects, all of which involved positive acts. In three specifications he was accused of digging the trench in unstable soil without complying with applicable safety standards. In two others he was accused of sending Sweeny into the trench when he knew it would cave in and without providing him a ladder to escape. In the remaining specification he was accused of leaving the job site while Sweeny was in the trench, knowing it would cave in. Even assuming that accusations of gross negligence could conceivably be charges of passive negligence, no doubt exists that Pease defended charges of active negligence in the Sweeny action. His liability would not have been predicated on mere imputed or constructive fault or simple failure to perform a duty imposed by law. Rather, he plainly defended charges of active negligence in which his personal participation was inherent and essential. His assertion of secondary liability rests on a theory that he did not know any better than to act as he did and was just following Pexa's orders. This is a claim that Pexa's fault was greater in degree, but it is not a basis for converting all of the charges against Pease into allegations of primary negligence against Pexa and merely charges of passive negligence against Pease.

Therefore the ground of Pexa's motion for summary judgment was good. We hold that, as a matter of law, the liability of Pease in the Sweeny suit would not have been secondary to wrongdoing of Pexa.

The trial court did not err in entering summary judgment.

AFFIRMED.