**IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellant,**

v.

**GENERAL ELECTRIC COMPANY, Bulldog Equities, John A. Leefers, Richard D. Raymon, and Arthur John, Inc., Appellees.**

No. 69622.

Supreme Court of Iowa.

June 13, 1984.

D.G. Ribble and Donna L. Paulsen, of Lynch, Dallas, Smith & Harmon, Cedar Rapids, for appellant.

David Dutton, of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellee General Electric Company.

Jay P. Roberts, of Swisher & Cohrt, Waterloo, for appellees Bulldog Equities, Leefers, Raymon and Arthur John Inc.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

Five year old Trevallis L. Swayze was seriously injured at the apartment complex where he resided when he put his hand inside an unpadlocked pad-mounted transformer box installed and maintained by Iowa Electric Light and Power Company (IE). IE settled Trevallis's personal injury claim, then brought this action (1) to obtain indemnity or contribution from General Electric Company (GE), which manufactured and sold the transformer, and (2) to obtain contribution from the other defendants (collectively referred to as Bulldog), who owned and operated the apartment complex in Cedar Rapids where the transformer was located. Trial to the court, with jury waived, resulted in findings and conclusions upholding IE's claim for contribution against GE and denying its other pleaded claims. On review of the IE and GE appeals and cross-appeals from the trial court's decision, we affirm.

The electrical transformer involved in Trevallis Swayze's accident was sold by GE to IE and was installed near the rear wall of a Bulldog apartment building as part of IE's electrical system which served the facility. This transformer had no warnings on it about the dangerous nature of the transformer. It was designed to be locked with a padlock, but the transformer was not locked at the time Trevallis was injured.

The trial court found that IE, GE and Bulldog would all have been held liable to compensate Trevallis for his injuries and also found that IE had settled the claim for a reasonable amount. The trial court found that IE would have been liable for negligence in failing to keep the transformer padlocked and failing to post reasonably adequate warnings of the danger. It found that GE would have been liable both on a theory of strict liability because it had sold the transformer in an unreasonably dangerous condition and on a theory of negligence because it had failed to warn of the danger when it sold the product. Finally, the trial court concluded that Bulldog too would have been liable for Trevallis's injuries because it had failed to maintain all common areas of the apartment premises in a reasonably safe condition, a breach of its duty as a landlord at common law and under Iowa Code section 562A.15(1)(c) (1979). We now must decide whether the trial court correctly decided that IE and GE, but not Bulldog, should bear equal responsibility for payment of the amount received in settlement by Trevallis.

Preliminarily we must address the standard of review in this case. Indemnity and contribution are based on equitable principles. *Hunt v. Ernzen*, 252 N.W.2d 445, 447–48 (Iowa 1977) (indemnity, a form of restitution, is founded on equitable principles); *Best v. Yerkes*, 247 Iowa 800, 810, 77 N.W.2d 23, 29 (1956) (recognizing right of equitable contribution among joint tortfeasors). This action, however, was brought as an action at law. No party requested that the case be transferred to the equity docket, and the trial court and parties tried the case as an action at law, with jury waived. Therefore, we will also treat this as an action at law on appeal. *Citizens Savings Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982); *Sanborn v. Maryland Casualty Co.*, 255 Iowa 1319, 1321, 125 N.W.2d 758, 759 (1964). Our review is not de novo; the trial court's findings of fact are binding upon us if supported by substantial evidence. Iowa R.App.P. 4, 14(f)(1).

I. *IE's Judgment Against GE for Contribution.*

A. Proximate Cause. In attempting to reverse IE's judgment against it for contribution, GE argues that the trial court did not make a sufficient finding that GE's failure to warn proximately caused the accident.

Causation is an element essential for finding a party liable in a tort action. To constitute a proximate cause of harm to another, a party's conduct must have been a substantial factor in bringing about that harm. *Oak Leaf Country Club, Inc. v. Wilson*, 257 N.W.2d 739, 746 (Iowa 1977); *Pedersen v. Kuhr*, 201 N.W.2d 711, 713 (Iowa 1972); Restatement (Second) of Torts §§ 430–33 (1965).

On this issue GE concentrates its fire on the following statement in the trial court's decision: "Had reasonable warnings been attached to the transformer, the incident may have been averted." GE asserts that the trial court was required to find not just that the accident "may" have been averted but that it definitely would have been averted.

It is clear that the trial court found GE's conduct to be a proximate cause of the accident, despite its use of the phrase "may have been averted." Earlier in its opinion, the trial court stated that GE's failure to place a warning on the transformer "was a proximate cause of the personal injury and damages suffered by Trevallis Swayze." The trial court thereby made a sufficient finding of proximate cause.

Generally questions of proximate cause are for the jury; only in exceptional cases may they be decided as matters of law. Iowa R.App.P. 14(f)(10). Here, substantial evidence in the record supports the trial court's finding of proximate cause. The trial court could properly find from all of the surrounding circumstances that if GE had affixed to its product an appropriate warning about the danger lurking in the transformer, the apartment complex

manager, the parents of the children who played around the transformer or other persons would have taken precautions either to keep children away from the transformer or to make sure the transformer remained locked. *See DeSantis v. Parker Feeders, Inc.,* 547 F.2d 357, 364 (7th Cir. 1976).

The record contains sufficient evidence to support the trial court's finding that GE's failure to affix appropriate warnings to the transformer it sold was a proximate cause of the accident and injuries to Trevallis.

B. Superseding Cause. GE also argues that IE's negligence in failing to keep the transformer box padlocked was a superseding cause of Trevallis Swayze's injury, relieving GE of liability.

 A determination of whether another person's conduct constitutes a superseding cause is usually a question of fact, and it is a question of law only in extreme circumstances where it is manifestly clear that the intervening conduct was a superseding event. *Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 15 (Iowa 1977); *Schnebly v. Baker,* 217 N.W.2d 708, 729 (Iowa 1974). We will not reverse such a determination if it is supported by substantial evidence. Iowa R.App.P. 14(f)(1). Moreover, an intervening act or force will not relieve a negligent defendant of liability if that act or force was a normal consequence of the defendant's conduct or was reasonably foreseeable by that defendant. *Haumerson v. Ford Motor Co.,* 257 N.W.2d at 15.

 Section 442 of the Restatement (Second) of Torts sets out several factors which should be considered in determining whether an intervening act or force constitutes a superseding cause:

The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

a. The fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

b. The fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

c. The fact that the intervening force is operating independently of any situation created by actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

d. The fact that the operation of the intervening force is due to a third person's act or his failure to act;

e. The fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

f. The degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

Although GE contends that several of the above subsections are favorable to its superseding cause defense, all of the listed factors must be considered together. Section 447 of the Restatement, referred to in the comments to section 442, is also instructive in determining whether an intervening act constitutes a superseding cause:

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

We approve the Restatement analysis. Applying these Restatement principles to the facts of this case, we agree with the trial court's conclusion that IE's conduct was not a superseding cause which relieved GE of liability. The trial court found, on the basis of substantial evidence in the record, that GE should have foreseen that the transformer might at some time be left unlocked by IE personnel. If GE had affixed appropriate warnings on the transformer that it sold to IE, IE might itself have taken further precautionary steps necessary to safeguard persons like Trevallis from electrical injury. Even though IE knew of the danger, negligently failed to warn of the danger, and failed to see that a padlock was kept in place, GE's failure to warn brought about the same harm and was of essentially the same degree of culpability. While IE's conduct occurred after GE sold the transformer and involved activity independent of GE's conduct, IE's failure to warn and failure to secure the transformer box were a normal result of GE's failure to warn, within the meaning of section 443 of the Restatement (Second) of Torts, which states:

> The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about.

GE's failure to affix appropriate warnings to the dangerous product which it sold to IE may have put IE off its guard about the need to take special precautions to avoid this accident. Comment b of section 443 explains that the word "normal" is there used as "the antithesis of abnormal, of extraordinary." The trial court properly concluded that IE's conduct giving rise to Trevallis's injuries was not extraordinary, in view of GE's failure to give appropriate warning when it sold the transformer to IE.

GE cannot square its superseding cause defense with applicable Restatement principles and the record-supported findings of the trial court. The trial court did not err in concluding that IE's negligent conduct was not a superseding cause of the injuries to Trevallis.

C. Apportioned Liability. Finally, GE argues that the trial court should have apportioned liability by applying a theory of comparative contribution. GE contends that comparative contribution is entirely consistent with this court's adoption of comparative fault in *Goetzman v. Wichern*, 327 N.W.2d 742, 754 (Iowa 1982). This issue was not presented to the trial court, however, and we will not address issues raised for the first time on appeal. *See Regal Insurance Co. v. Summit Guaranty Corp.*, 324 N.W.2d 697, 706 (Iowa 1982); *Peel v. Burk*, 197 N.W.2d 617, 619 (Iowa 1972); *cf. Goetzman v. Wichern*, 327 N.W.2d at 754 (comparative negligence does not apply to cases tried before December 22, 1982 unless comparative fault issue was preserved).

## II. *IE's Claim Against GE for Indemnity.*

IE appeals from the trial court's denial of its claim against GE for indemnity. Indemnity is a form of restitution that is founded on equitable principles, placing the final responsibility between two obligated persons where equity would lay the ultimate burden. *Hunt v. Ernzen*, 252 N.W.2d at 447–48. We have recognized four possible grounds for indemnity: (1) express contract; (2) vicarious liability; (3) breach of independent duty of indemnitor to indemnitee; and (4) secondary as opposed to primary liability. *Sweeny v. Pease*, 294 N.W.2d 819, 821 (Iowa 1980); *Iowa Power & Light Co. v. Abild Construction Co.*, 259 Iowa 314, 322–23, 144 N.W.2d 303, 308 (1966).

IE contends that GE's liability for indemnity can properly be grounded on GE's strict liability in tort. It asserts its strict-liability basis for indemnity is an offshoot of the secondary-primary liability basis for indemnity. IE contends that its negligence does not preclude recovery of indemnity under this theory because contributory negligence is not a defense to an action

based on strict liability in tort. *See Franken v. City of Sioux Center*, 272 N.W.2d 422, 425 (Iowa 1978); *Hawkeye Security Insurance Co. v. Ford Motor Co.*, 199 N.W.2d 373, 380–81 (Iowa 1972); Restatement (Second) of Torts § 515, comment (b) (1965).

In *Hawkeye-Security* we held that a party whose negligence consisted of failing to discover a vehicle's defective brakes and failing to guard against that condition might still prevail in an action for indemnity against a strictly liable seller. 199 N.W.2d at 380. We did not there decide, however, whether a party whose negligence constitutes a concurring independent cause of the harm would still be entitled to be indemnified from a strictly liable seller. We said:

> Indemnity is not barred here by the failure of Kolby or Tri-B to discover the defective brakes, even if they were negligent in such respect. We need not decide whether indemnity would be barred, as distinguished from contribution, if Kolby or Tri-B were negligent in a respect independent of the brakes, which was a concurring proximate cause of the collision.

199 N.W.2d at 380. One case we there cited was *Northwestern Mutual Insurance Co. v. Stromme*, which used the following test for determining when a strictly-liable seller can be held liable for indemnity:

> [I]f the tortious conduct of the wrongdoer, regardless of the underlying theory of liability, does nothing more than furnish a condition through which a subsequent independent "act" of a co-wrongdoer occurs, the tort-feasors are not in pari delicto and indemnity may be allowed. Conversely, if each of the tortfeasors' acts although independent concur in establishing the basis for the actual liability, they are in pari delicto and indemnity will not be allowed.

4 Wash.App. 85, 89, 479 P.2d 554, 556–57 (1971). The facts of this case do present the legal issue which *Hawkeye-Security* did not decide, and we approve the quoted

passage from the Washington case as a useful guide in determining whether IE should obtain indemnity from GE in this case.

The trial court determined that GE would be liable to Trevallis on two theories—negligence for failing to warn and strict liability for selling an unreasonably dangerous product. Substantial legal authority supports those determinations. *See Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1087–89 (5th Cir. 1973) *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974) (strict liability based on inadequate failure to warn of product's unreasonably dangerous condition); *West v. Broderick and Bascom Rope Co.*, 197 N.W.2d 202, 209 (Iowa 1972) (negligent failure to warn of danger); *LaCoste v. Ford Motor Co.*, 322 N.W.2d 898, 900–01 (Iowa Ct.App.1982) (inadequate warning of dangerous condition supported strict liability claim). *See generally* J. Beasley, *Products Liability and the Unreasonably Dangerous Requirement* 421–43 (1981). GE's liability was thus premised on its inadequate warning of the dangerous condition of the transformer. IE, however, had actual knowledge of that dangerous condition and was itself negligent in respects independent of the condition created by GE's conduct. IE, a supplier of electricity, is held to the highest degree of care consistent with the conduct and operation of its business. *Nelson v. Iowa-Illinois Gas & Electric Co.*, 160 N.W.2d 448, 452 (Iowa 1968); *Cronk v. Iowa Power & Light Co.*, 258 Iowa 603, 611, 138 N.W.2d 843, 847–48 (1965). IE was found negligent not only for failing to warn about the transformer's dangerous condition but also for failing to keep the transformer padlocked. IE's breaches of duties owed to Trevallis were positive acts, the negligent conduct of active operations. *See Sweeny v. Pease*, 294 N.W.2d at 823. As the trial court stated:

> IE's negligence in this case is much more than a failure to discover the defective nature of the transformer. It was aware of the absence of warnings on the

transformer it purchased from GE and did not attach any warnings despite such knowledge and further knowing the relative ease or likelihood of public access to pad-mounted transformers. Where there is a negligent failure to warn of a defective condition by one who has knowledge of the defect and an opportunity to issue a warning, the distinction between strict liability by a manufacturer and negligence by a purchaser or user is one of form rather than substance. IE's failure to secure the transformer only compounds the equitable reasons for denying indemnity.

. . . .

IE knew of the danger created by the defect and yet acquiesced in the continuation of the condition. In so doing its culpability is not qualitatively different from that of GE.

■■■■ The trial court correctly recognized that indemnity is founded on equitable principles and that it therefore should analyze and compare qualitatively the conduct of both concurrently liable parties, IE and GE. We agree with the trial court that IE was not entitled to indemnity. The facts found by the trial court establish that IE's negligent acts, which concurred with GE's conduct to cause harm, were sufficiently independent of the defective condition of GE's product to bar its claim for indemnity. The trial court's findings of fact on this issue were supported by the record, and its qualitative comparison of the conduct of IE and GE was sound. Consequently, IE was not entitled to indemnity even though GE would have been liable to Trevallis on a theory of strict liability in tort.

### III. *Liability of Bulldog.*

■■■■ Both IE and GE appeal from the trial court's conclusion that IE was not entitled to contribution from Bulldog. While the trial court found that Bulldog was negligent in failing to maintain common areas of the apartment complex in a reasonably safe condition, it also found that Bulldog merely failed to discover the

dangerous condition which both IE and GE had themselves created. The trial court concluded that Bulldog was not liable to IE for contribution because Bulldog would have been entitled to indemnity from IE. One who must indemnify another is precluded from claiming contribution against that person. *Stowe v. Wood,* 199 N.W.2d 323, 327 (Iowa 1972).

■■■■ In analyzing this issue the trial court compared qualitatively the conduct of IE, GE and Bulldog, then concluded that it would be inequitable to allow IE to obtain contribution from Bulldog. The trial court also noted that this result is supported by section 886B of the Restatement (Second) of Torts (1979), which provides in pertinent part:

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following:

. . . .

(d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

(e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

. . . .

Both subsections (d) and (e) of section 886B are applicable to the facts found by the trial court. There is substantial evidence in the record to support the trial court's findings (1) that Bulldog merely failed to discover the dangerous condition created by the conduct of both IE and GE, and (2) that Bulldog had neither actual nor con-

structive knowledge of that dangerous con- dition. Bulldog's liability-producing con- duct consisted entirely of its failure to per- form the duty imposed by law on a landlord to maintain the premises in a reasonably safe condition. *See* Iowa Code § 562A.15(1)(c) (1979); *Montgomery v. En- gel*, 179 N.W.2d 478, 480 (Iowa 1970). Un- like IE and GE, Bulldog did not participate in positive conduct which created the dan- ger that proximately caused Trevallis's in- juries. *See Sweeny v. Pease*, 294 N.W.2d at 822. We agree with the trial court that under these circumstances IE failed to es- tablish a right to equitable contribution from Bulldog.

The trial court carefully articulated the factual and legal bases for its rulings on each of the claims for contribution and indemnity asserted by IE and GE. Each of its multiple findings of fact is supported by substantial evidence in the record. Neither IE nor GE has demonstrated that the trial court erred in concluding that they should each pay one-half of the settlement made to compensate Trevallis Swayze for his in- juries.

AFFIRMED.