John STIBBS, et al., Plaintiffs,

v.

MAPCO, INC., et al., Defendants.

CIVIL No. 1–94–70002.

United States District Court,
S.D. Iowa,
Western Division.

Aug. 7, 1996.

Ronny M. Bitting, Turner Jones Bitting & Omeara, Clarinda, IA, Robert F. Leonard, Sidney, IA, for John Stibbs, Angela Stibbs, Matt Stibbs, William Stibbs.

Robert Kohorst, Kohorst Law Firm, Harlan, IA, for Mapco Inc., Mapco Natural Gas Liquids Inc.

George W. Flynn, Scott M. Rusert, Cosgrove Flynn & Gaskins, Minneapolis, MN, Frank A. Comito, Comito P.C., Des Moines, IA, for Emerson Electric Co.

Henry A. Harmon, Grefe & Sidney, Des Moines, IA, for State Industries Inc.

Philip J. Willson, Willson & Pechacek P.L.C., Council Bluffs, IA, William F. Womble, Jr., Erna A. Patrick, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, for Rego Claimants Trust.

Robert Kohorst, Kohorst Law firm, Harlan, IA, Leonard Johnson, John G. Hansen, Morrison Hecker Curtis Kuder & Parrish, Kansas City, MO, Lew Eells, Eells & Sovern, Cedar Rapids, IA, for Thermogas Company.

Robert Kohorst, Kohorst Law Firm, Harlan, IA, Leonard Johnson, John C. Hanson, R. Christopher Abele, Morrison Hecker Curtis Kuder & Parrish, Kansas City, MO, Lew Eells, Eells & Sovern, Cedar Rapids, IA, for Mid–America Pipeline Co.

Brien M. Welch, Cassem Tierney Adams Gotch & Douglas, Omaha, NE, Leif D. Erickson, Omaha, NE, Eileen Wilson Kisluk, Enron Corp. Litigation Unit, Houston, TX, for Enron Liquids Pipeline Co.

A. Roger Witke, August B. Landis, Maureen R. Tobin, Whitfield & Eddy P.L.C., Des Moines, IA, Jennifer G. Fry, Phillips Petroleum Co., Office of General Counsel, Bartlesville, OK, for Phillips Petroleum Company.

David C. Shinkle, Reavely Shinkle Bauer Scism Doyle & Hudson, Des Moines, IA, W. Michael Shinkle, Davenport, IA, for Natural Gas Odorizing Inc.

Brien M. Welch, Cassem Tierney Adams Gotch & Douglas, Omaha, NE, Leif D. Erickson, Omaha, NE, Eileen Wilson Kisluk, Enron Corp. Litigation Unit, Houston, TX, for Enron Liquid Pipeline Operating Limited Partnership.

## MEMORANDUM OPINION, RULING GRANTING MID–AMERICA PIPE-LINE'S MOTION FOR SUMMARY JUDGMENT, AND ORDER

VIETOR, District Judge.

Plaintiffs, John Stibbs and his immediate family (his wife, Angela, and his sons, William and Matt), bring claims of negligence, breach of implied warranty, strict liability for placing a defective product in the stream of commerce, and fraud against defendants based on injuries caused to John Stibbs by an explosion that occurred when he attempted to light the pilot light on his propane-fueled water heater. Defendant Mid–America Pipeline Co. ("Mid–America") moves for summary judgment on all of plaintiffs' claims against it. Plaintiffs resist, and oral hearings were held (at the same time as similar motions from defendants Emerson Electric Co. and Thermogas). The motion is submitted.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). To preclude the entry of summary judgment, the nonmovants must make a sufficient showing on every essential element of their case for which they have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 838 (8th Cir.1988). Rule 56(e) requires the nonmoving parties to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Johnson v. Schopf*, 669 F.Supp. 291, 295 (D.Minn.1987). The quantum of proof that the nonmoving parties must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant[s]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Johnson*, 669 F.Supp. at 295–96.

On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving parties, and gives those parties the benefit of all reasonable inferences that can be drawn from the facts. *United States v. City of Columbia, Mo.*, 914 F.2d 151, 153 (8th Cir.1990); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990).

## FACTS

For purposes of this motion, the following facts are undisputed or represent plaintiffs'

version. John Stibbs was injured in a liquified petroleum (LP, referred to interchangeably by the parties and in this opinion as "propane") explosion on July 17, 1992 while trying to light a water heater pilot light in his basement.[1] Defendant Mid–America is a common carrier that operates a pipeline system for the transportation of propane and other natural gas liquids for its customers, called shippers. At its truck terminals, Mid–America loads the propane from its pipeline into the shippers' transport vehicles. The shippers then sell the propane to retailers (or consignees), who sell the propane to commercial or residential end-users. Mid–America does not manufacture, buy, sell, or take title to the propane. Mid–America does not engage in the retail distribution or sale of propane. Mid–America furnished the propane that allegedly caused the explosion in the Stibbs' home to one of its shippers, MAPCO Gas Products, Inc. ("MAPCO, Inc."), who in turn supplied it to a consignee, Thermogas Company ("Thermogas"), who then delivered the propane to Mr. Stibbs' home.

Before Mid–America loads the propane into the shippers' transport vehicles, it injects an odorant, ethyl mercaptan, into the propane at a rate of approximately 1.5 pounds of odorant per 10,000 gallons of propane. The odorant is added to give the propane, which is odorless in its natural state, a distinctive gassy odor that can be readily detected. Mid–America uses only ethyl mercaptan as an odorant, unless a shipper or its customers make prior alternative arrangements. Ethyl mercaptan is subject to "odor fade," a phenomenon by which the intensity of its odor is reduced, either because of oxidation, absorption, or adsorption. In addition, a small percentage of persons cannot smell certain odors such as ethyl mercaptan.

When a shipper utilizes Mid–America's pipeline, the relationship is governed by a tariff. This tariff requires that the shipper acknowledge that it is knowledgeable in the chemical and physical properties, limitations, storage, use, and handling of both odorant and propane, whether odorized or unodorized. The tariff also requires the shipper to provide its retailers with any information and warnings it believes necessary for the proper use of odorized propane. The tariff also provides:

> Ethyl mercaptan shall be provided as an accommodation to Shipper and its Consignees. Carrier shall act as an agent for the Shipper in the purchase, storage, and injection of ethyl mercaptan and act on Shipper's behalf for the sole purpose of enabling Shipper and its Consignees to comply with applicable * * * [laws] governing the injection of ethyl mercaptan * * *.

Plaintiffs' expert, Tim Dunn, testified that in his opinion, absent other warnings, the use of ethyl mercaptan as the sole warning method for propane leaks is unreasonably dangerous because this odorant will not be effective under foreseen circumstances (for example, under the circumstances of odor fade). In Dunn's opinion, there are alternative odorants and multi-odorant blends that are available, feasible, and superior to ethyl mercaptan. Plaintiffs' experts also testified that a proper warning to an end user should include an oral component and should advise the user to have a propane dealer light pilot lights. The experts also stated that a carrier, like Mid–America, should take steps to insure that its customers pass on adequate warnings to the end user, rather than relying solely on the shipper to determine the warning that it deems appropriate to give to its customers.

In 1992, Mid–America mailed each of its shippers a packet of information about the characteristics of propane and its safe use and handling, including the possibility of odor fade. The information was mailed to MAPCO, Inc. in June 1992. When John Stibbs ordered propane from Thermogas on July 15, 1992 (two days prior to the accident), a free brochure produced by the National Propane Gas Association (NPGA) entitled "How's

---

1. For a more thorough recitation of the facts surrounding the actual explosion and the events leading up to that explosion, see this court's "Rulings Granting White–Rodgers' Motion for Summary Judgment and Denying Thermogas' Motion for Summary Judgment, and Order" dated June 26, 1996.

Your Nose" was on the counter in the Thermogas office. The "How's Your Nose" brochure is designed to inform consumers about the characteristics of odorized propane and how to respond in the event of a leak or appliance malfunction. The brochure also includes information about "odor fade." John Stibbs' tavern, the Town & Country Tavern in Imogene, Iowa, was a propane customer of Thermogas. Thermogas provided John Stibbs with a copy of the "How's Your Nose" brochure by mail to the Town & Country Tavern on April 2, 1992. Stibbs was a residential customer of Whitehill Gas & Oil from 1987 through March 1993. During that time, Whitehill mailed a copy of the "How's Your Nose" brochure (or similar information) to its customers once per year during that period. Stibbs admits that he had seen such warning materials, but states that he never took the time to read them.

In December 1985, while being treated after an automobile accident, John Stibbs was diagnosed as having a reduced sense of smell. He retains some sense of smell, and can smell some odors such as gas from a car, but he is unable to smell ethyl mercaptan.

## DISCUSSION

Defendant Mid–America moves for summary judgment on all of plaintiffs' claims against it found in plaintiffs' "Amended, Recast, and Substituted Complaint." In that Complaint, plaintiffs order their claims against defendant Mid–America into the following counts: Counts I through IV, the negligence claims as to all four plaintiffs (John Stibbs, his wife, Angela, and his sons, William and Matt); Counts V through VIII, the breach of implied warranty claims as to all four plaintiffs; Counts IX through XII, the strict liability claims as to all four plaintiffs; and Counts XXV through XXVIII, the fraud claims as to all four plaintiffs.

2. In their complaint, plaintiffs also assert that Mid–America was negligent "in failing to inject sufficient quantities of the odorant, ethyl mercaptan, into the LP gas" and "in failing to detect the aforementioned omission before introducing into the stream of commerce the LP gas which was subsequently delivered to the residence of John Stibbs." Plaintiffs, however, have failed to present any evidence that the amount of odorant

## Plaintiffs' Claims Based on Mid–America's Selection of Ethyl Mercaptan as the Odorant

Plaintiffs allege negligence on the part of Mid–America under two theories. First, plaintiffs allege Mid–America was negligent in its selection of ethyl mercaptan as the sole odorizing and warning agent for propane because of the fact that other alternative odorants and multi-odorant blends were available, feasible, and superior to ethyl mercaptan. Second, plaintiffs allege Mid–America was negligent because it failed to directly warn shippers, customers of shippers, and the ultimate consumers of the dangers of odorized propane, including the phenomenon of odor fading.[2]

▮ With regard to plaintiffs' contention that Mid–America was negligent in its selection of ethyl mercaptan as the odorant used, Mid–America counters that its compliance with the standards set by the regulations, specifically 49 C.F.R. § 173.315(b)(1) and Note 2 of that section, is conclusive evidence of due care in its selection and use of ethyl mercaptan. Because I will resolve this matter on other grounds, I do not reach the issue of whether Mid–America's compliance with this particular federal standard conclusively absolves it of liability. I do, however, note that under Iowa law, compliance with the regulation, while weighing heavily in favor of Mid–America's due care, is most likely not conclusive. *See Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 322 (Iowa 1992). This evidence, however, combined with the additional circumstances here demonstrates to this court that Mid–America most likely was not negligent—that is, it did not breach its duty to the Stibbs by selecting ethyl mercaptan as the odorizing agent.

▮ Even assuming that Mid–America somehow breached a duty owed, defendant's

injected into the propane by Mid–America was somehow insufficient. Accordingly, motion for summary judgment as to these theories of negligence will be granted.

To the extent that these claims raise issues regarding either the selection of the odorant or the odorant as defective, the matters will be addressed in the following discussion.

motion for summary judgment as to this negligence claim will nevertheless be granted because plaintiffs have failed to show the required causation element. Causation is an essential element for finding a party liable in a tort action. *Iowa Elec. Light & Power Co. v. General Elec. Co.*, 352 N.W.2d 231, 234 (Iowa 1984). Plaintiffs have not shown that Mid–America's act of choosing ethyl mercaptan instead an alternative odorant caused John Stibbs's injuries. Assuming plaintiffs' contention concerning ethyl mercaptan is correct (that superior odorants exist that are less likely to experience odor fade), there is no evidence in the summary judgment record that John Stibbs could have smelled an alternative odorant or a multi-odorant blend, if one had been used. Plaintiffs' only evidence of Stibbs's capacity to smell is that he retains some sense of smell, and can smell some odors such as gas from a car. He is, however, unable to smell ethyl mercaptan. Plaintiffs have not shown that "but for" Mid–America's choice of odorant, John Stibbs would not have been injured. *See Ehmke v. Sioux City*, 257 Iowa 115, 131 N.W.2d 821 (1964). Moreover, despite plaintiffs' contention that ethyl mercaptan is more susceptible to the phenomenon of odor fade than other odorants, they have not come forward with any evidence that the odor of the specific ethyl mercaptan at issue here actually faded. Accordingly, Mid–America's motion for summary judgment as to plaintiffs' negligence claims under this theory of liability will be granted.

Given the previous conclusion concerning plaintiffs' lack of evidence of causation, plaintiffs' other claims that allege liability on the part of Mid–America based on its choice of ethyl mercaptan as the odorant will also be dismissed. Accordingly, defendant's motion for summary judgment as to the claims of strict liability based on Mid–America's selection of ethyl mercaptan as the odorant will be granted.

## Plaintiffs' Claims Based on Mid–America's Failure to Warn

As to plaintiffs' contention that Mid–America was negligent because it failed to adequately warn the ultimate consumers of the dangers of odorized propane, Mid–America contends that how far down the chain of distribution a manufacturer must warn is determined by the general requirement of reasonable care. It contends that it complied with its duty to warn by providing information to the shippers, who have a duty under the tariff to pass on information to its retailers. In addition to this portion of their negligence claims, plaintiffs also bring claims of strict liability that are based on the underlying allegation that the "defect" in the propane was Mid–America's failure to adequately warn of its dangers. The Iowa Supreme Court, however, has explicitly decided that in a products liability case in which the alleged product "defect" is defendant's failure to warn, the proper analysis of the claim is negligence—not strict liability. *Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 287–89 (Iowa 1994). I will, therefore, apply a negligence analysis to plaintiffs' failure to warn claims and any arguments by plaintiffs to hold defendant strictly liable for its alleged failure to warn will be ignored.[3]

As previously noted, by adopting section 388 of the Restatement (Second) of Torts in cases, like the present one, in which failure to warn is the product's alleged defect, the Iowa courts employ a negligence analysis. *See, e.g., Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 864 (Iowa 1994); *Henkel v. R & S Bottling Co.*, 323 N.W.2d

---

**3.** To the extent that plaintiffs attempt to raise strict liability claims against Mid–America based on a product defect other than a "failure to warn" defect, those claims will also be dismissed as lacking the required causation element. Under this court's interpretation of plaintiffs' complaint, a portion of plaintiffs' strict liability claims attempt to hold Mid–America liable for a defective product based on the fact that the odorant used, ethyl mercaptan, loses its odor in certain circumstances and thereby does not adequately serve as a warning agent. As previously discussed, there is no evidence in the record that the ethyl mercaptan here in fact experienced "odor fade" nor is there any evidence that if Mid–America had used an alternative odorant, plaintiff John Stibbs could have smelled the alternative. *Cf. Donahue v. Phillips Petroleum Co.*, 866 F.2d 1008, 1010 (8th Cir.1989) (determining that under Missouri law, plaintiffs' strict liability defective product claim based on the fact that ethyl mercaptan experiences "odor fade" in certain circumstances survives summary judgment by supplier of the odorant).

185, 188 (Iowa 1982); *West v. Broderick & Bascom Rope Co.*, 197 N.W.2d 202, 203 (Iowa 1972). The Iowa courts have recognized that the duty of care placed on a supplier of a product may include an obligation to warn of the danger caused by use of the product. *Henkel v. R & S Bottling Co.*, 323 N.W.2d at 188. Section 388 of the Restatement (Second) of Torts states, in pertinent part, that a supplier of a chattel is subject to liability to those whom the supplier would expect to use the chattel if the supplier "fails to exercise *reasonable care* to inform them of its dangerous condition or of the facts which make it likely to be dangerous." *See, e.g., Spaur,* 510 N.W.2d at 864; *Henkel,* 323 N.W.2d at 188 (emphasis added).

■ Under section 388, the question of whether a warning is required, and to whom it must be given, is determined by standards of reasonable care. *See Henkel,* 323 N.W.2d at 188 (citation omitted). The Iowa courts have enumerated several factors for use in determining whether reasonable care requires a warning and to whom a warning must be given.

> Whether reasonable care requires warning beyond the manufacturer's immediate vendee in a particular case depends on various factors. * * * Among them are the likelihood or unlikelihood that harm will occur if the vendee does not pass on the warning to the ultimate user, the trivial or substantial nature of the probable harm, the probability or improbability that the particular vendee will pass on the warning, and the ease or burden of the giving of warning by the manufacturer to the ultimate user.

*West v. Broderick & Bascom Rope Co.*, 197 N.W.2d at 211. While the issue of whether a defendant has a duty to warn is typically a question for the jury, *Cooley v. Quick Supply Co.*, 221 N.W.2d 763, 772 (Iowa 1974) (citing *West v. Broderick & Bascom Rope Co.*, 197 N.W.2d at 211, 212), " 'cases may arise in which the factors are such that a court may rule as a matter of law the giving of warning

to a manufacturer's vendee alone is, or is not, due care.' " *Id.* The present case is one in which the issue of due care can be decided by the court. I conclude that as a matter of law, Mid–America complied with its duty to warn and that its duty does not include the conditions proposed by plaintiffs.

■ Mid–America complied with its duty to warn first by obtaining assurances from its customers—the shippers—that they are knowledgeable in odorized or unodorized propane. Second, it also requires shippers to provide its retailers with any information and warnings they believe necessary for the proper use of odorized propane.[4] Finally, Mid–America provided its customers with information about the characteristics of odorized propane, and specific to this case, it mailed a packet of information about the characteristics of propane and its safe use and handling, (including the possibility of odor fade) to MAPCO, Inc. in June 1992. *See Donahue v. Phillips Petroleum Co.*, 866 F.2d at 1012 (stating that even a "bulk supplier" is required to provide adequate instructions to the distributor next in line).

Plaintiffs' experts contend that Mid–America's duty to warn should include an oral warning to the end users of the propane to advise them, *inter alia,* to have a propane dealer light extinguished pilot lights. The experts also stated that a carrier, like Mid–America, should take steps to insure that its customers pass on adequate warnings to the end user, rather than relying solely on the shipper to determine the warning that it deems appropriate to give to its customers. I conclude that the steps advanced by plaintiffs' experts are simply too burdensome, if not impossible, for Mid–America to fulfill. When specifically questioned about the conditions proposed, plaintiffs' expert, Tim Dunn, theorized that one method by which Mid–America could comply with its duty would be a "road show" whereby employees of Mid–America would call on the individual propane retailers (including their servicemen) and personally stage a presentation/experiment

---

**4.** *See Donahue v. Phillips Petroleum Co.*, 866 F.2d at 1012 (suggesting, without determining, that the supplier of ethyl mercaptan could discharge its obligation to warn of the dangers of "odor fade" by contracting with the purchaser to ensure that adequate warnings ultimately reach the consumer).

to demonstrate the dangers of using odorized propane (that is, the phenomenon of odor fade). *See* Deposition of Timothy G. Dunn, at 203–04, 207–08. As a part of this presentation, Mid–America should, according to Mr. Dunn, emphasize to the gas company employees the importance of talking to their customers about keeping their gas appliances in good working order. *Id.* at 207–08. Plaintiffs' proposals are simply not feasible nor is there any evidence in the record that such actions would indeed ensure that a warning gets to the ultimate user. Accordingly, I conclude that Mid–America complied with its duty to warn, and defendant's motion for summary judgment as to all claims based on Mid–America's alleged failure to warn will be granted.

### Plaintiffs' Breach of Implied Warranty Claims

In Counts V through VIII, each of the four plaintiffs assert a breach of implied warranty claim against Mid–America, alleging that "Mid–America's sale of the ethyl mercaptan * * * constituted an implied warranty that [the] ethyl mercaptan was merchantable and reasonably fit for the purpose for which the odorant was generally used" and that its breach of this warranty was the proximate cause of the Stibbs' injuries. Because of plaintiffs' lack of causation evidence, defendant's motion for summary judgment will also be granted as to these claims.

### Plaintiffs' Fraud Claims

In Counts XXV through XXVIII, each of the four plaintiffs bring a fraud claim against Mid–America, alleging that it falsely "represented to plaintiff, a member of the general public, that Mid–America * * * would exercise care and caution in supplying [propane] gas to plaintiff John Stibbs in a "GAS OUT" situation" and that Stibbs relied on this false, material, and intentional misrepresentation. Defendant contends that plaintiffs have not shown the required elements for a fraud claim—an argument with which I agree. Plaintiffs have not shown that a material and false representation was made to them by one of Mid–America's agents, employees, or representatives upon which they relied to their detriment. Indeed, the heart of plaintiffs' failure to warn claims is the *absence* of any statements to the ultimate user as to the proper procedure in a "GAS OUT" situation. Accordingly, defendant's motion for summary judgment as to plaintiffs' fraud claims will be granted.

### RULING AND ORDERS

Defendant Mid–America's Motion for Summary Judgment is **GRANTED**.

**IT IS ORDERED** that the following claims against defendant Mid–America found in plaintiffs' Amended, Recast, and Substituted Complaint are **DISMISSED**: Counts I, II, III, and IV (the negligence claims as to the four plaintiffs); Counts V, VI, VII, and VIII (the breach of implied warranty claims as to the four plaintiffs); Counts IX, X, XI, and XII (the strict liability claims as to the four plaintiffs); and Counts XXV, XXVI, XXVII, and XXVIII (the fraud claims as to the four plaintiffs).

**IT IS FURTHER ORDERED** that plaintiffs' Complaint is **DISMISSED** as to defendant Mid–America Pipeline Company.